## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| EUGENE JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO.  CIV-06-0356-HE |
| | ) | |
| LIBERTY LIFE ASSURANCE | ) | |
| COMPANY OF BOSTON, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER</u>

Plaintiff Eugene Johnson filed this action seeking long term disability benefits under an employee welfare benefit plan ("the LTD Plan" or "Plan") established by his former employer, The Goodyear Tire and Rubber Company ("Goodyear" ), and governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461. Defendant Liberty Life Assurance Company of Boston ("Liberty Life")[1] issued the group disability policy in connection with the LTD Plan, and is the claim administer and payor. The plaintiff filed a claim for disability benefits in July, 2005, which Liberty Life denied on October 24, 2005, finding he did not meet the Plan definition of "disabled."  The plaintiff appealed that decision and the defendant denied the appeal on February 16, 2006.  This lawsuit followed.[2]

---

[1]*The defendant states in its brief that the plaintiff misnamed it in the complaint, but has  failed to correct the error.  The court sua sponte amends the complaint to identify the proper party defendant.  See generally Fed.R.Civ.P. 15(c)(3).  If the plaintiff objects to this change he is directed to file an objection within three days.*

[2]*The Administrative Record will be cites as "R." followed by the page number.*

Background

The plaintiff, who is 50, sustained a back injury in May, 1996, while working at the Goodyear plant in Lawton. He returned to work on restricted duty on October 31, 1996, but continued to suffer from low back pain,[3] which was treated conservatively with physical therapy and pain medication. Although surgery was suggested as a treatment option, the plaintiff decided against it. In July, 2004, he went on medical leave because of back pain. Although one neurosurgeon again thought surgery was possible, another, Dr. Cagle, disagreed. He felt that because the plaintiff had multiple levels of lumbar degenerative disease, conventional surgery would not be effective. Instead, he suggested that the plaintiff be seen by a physiatrist and recommended permanent light-duty employment or medical retirement.

Dr. Robinson, a physiatrist, initially saw the plaintiff on August 31, 2004. He prescribed pain medication and ordered a lumbar epidural injection and physical therapy. The next month the plaintiff attempted to return to work on restricted duty, but was sent home when he took a narcotic medication (Lortab) to relieve the pain. He was advised he could not work at Goodyear while taking that medication. On January 19, 2005, Dr. Robinson, who had been seeing the plaintiff monthly, concluded he had reached maximum medical improvement and released him to return to light duty work with permanent

---

[3]*The plaintiff's diagnosis was multiple levels of lumbar degenerative disease including L3-4, L4-5 and L5-S1), as well as radiculopathy of the right lower extremity. R. 212, 256.*

restrictions.[4]

The plaintiff did not return to work.  In April, 2005, he was treated for chronic pain by his family physician, Dr. Campbell, who subsequently, because of the plaintiff's continued back pain, use of narcotics to relieve the pain, and depression, referred him to a psychologist. The psychologist, Dr. Brady, saw the plaintiff in July, August and November, 2005, and advised the defendant in December, 2005, that the plaintiff had chronic intractable pain and a major depressive disorder and would require maintenance medication and psychotherapy.

The plaintiff never went back to Goodyear and, in July, 2005, applied for long term disability benefits.  In addition to chronic back pain, the plaintiff has been diagnosed with chronic, presumed dependent, narcotic usage, depression, anxiety disorder and hypertension.

In making its benefits determination, Liberty Life reviewed the plaintiff's pharmacy records, plus medical information obtained from Drs. Campbell, Robinson, Cagle, and Brady. The defendant obtained opinions about the plaintiff's condition from an independent medical examiner and a psychologist.  It also had the plaintiff undergo a Functional Capacity Evaluation and obtained an employability assessment from a vocational expert, who identified five light duty jobs the plaintiff could perform.[5]

---

[4]*The doctor imposed limitations on the plaintiff's ability to lift, push and pull and his walking, standing and sitting.  The plaintiff was not to do repetitive bending, twisting or stooping and was not to operate machinery or drive a commercial vehicle.*

[5]*The plaintiff demonstrated sufficient physical capacity for light work, but reported pain with nearly all activities.  "Self-limiting effort was noted during several tasks."  R. 205,*

Standard of Review

Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989) sets forth the appropriate standard of review in cases contesting a benefit determination under an ERISA plan.  "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[6] *Id.* at 115  If the ERISA plan gives the administrator discretionary powers, the district court reviews the administrator's decisions under an arbitrary and capricious standard.  Sandoval v. Aetna Life & Cas. Ins. Co., 967 F.2d 377, 379-80 (10th Cir.1992).

The parties have agreed that  the defendant's decision is reviewed under an arbitrary and capricious standard because the LTD Plan gives the administrator discretionary powers. Sandoval, 967 at 379-80.  When this standard is applied, "the decision will be upheld so long as it is predicated on a reasoned basis."  Adamson v. Unum Life Ins. Co., 455 F.3d 1209, 1212  (10th Cir. 2006).   There is "no requirement that the basis relied upon be the only logical one or even the superlative one."  *Id.*  The inquiry is "whether the administrator's decision resides 'somewhere on a continuum of reasonableness–even if on the low end.'" *Id.* (quoting Kimber v. Thiokol Corp., 196 F.3d 1092, 1098 (10th Cir. 1999)).

The plaintiff contends, however, that the deference accorded Liberty Life's decision

---

*277-86.  An employee of the defendant characterized the FCE  results as "not entirely conclusive."  R. 217.*

  [6]*ERISA does not establish the standard of review.  Firestone, 489 U.S. at 109.*

should be decreased because it operated under a conflict of interest due to its status as both plan administrator and insurer.  The Tenth Circuit has held that an entity which is both the plan insurer and the plan administrator operates under an inherent conflict of interest. DeGrado v. Jefferson Pilot Financial Ins. Co., 451 F.3d 1161, 1167 (10th Cir. 2006) ("[B]ecause it is both the insurer and plan administrator, Jefferson 'may favor, consciously or unconsciously, its interests over the interests of the plan beneficiaries.'" ) (quoting Fought v. UNUM Life Ins. Co. of Am., 379 F.3d 997, 1003 (Okla. 2004), *cert. denied*, 544 U.S. 1026 (2005)).  Where an inherent conflict of interest exists, "the plan administrator must demonstrate that its interpretation of the terms of the plan is reasonable and that its application of those terms to the claimant is supported by substantial evidence." *Id.* (internal quotation omitted).[7]  "Substantial evidence is of the sort that a reasonable mind could accept as sufficient to support a conclusion." Adamson, 455 F.3d at 1212.  It "means more than a scintilla, ... yet less than a preponderance." *Id.*  In light of the inherent conflict, the court will make an appropriate reduction in deference accorded Liberty Life's decision.

------------------------

[7]*The recent decisions of the Tenth Circuit Court of Appeals do not appear to be entirely consistent as to the effect of a conflict.  Compare DeGrado, 451 F.3d at 1168 with Adamson, 455 F.3d at 1213 ("The fact that UNUM administered and insured the group term life insurance portion of this plan does not on its own warrant a further reduction in deference.").  Here, given that Liberty Life is itself the plan administrator and the entity upon which the cost of benefits directly falls, the court concludes the inherent conflict warrants the indicated burden shift and less deferential standard of review.  See Fought, 379 F.3d at 1006 (When an inherent conflict of interest, a proven conflict of interest or a serious procedural irregularity exists and coverage was denied, "the plan administrator bears the burden of proving the reasonableness of its decision pursuant to [the Tenth Circuit's] traditional arbitrary and capricious standard.").*

Analysis

The court has confined its review to the administrative record,[8] *id.*; Sandoval, 967 F.2d at 380, and begins its analysis by examining the language of the Plan. For an employee to be considered "disabled" and entitled to benefits under the LTD plan, the employee must, as a result of injury or sickness, be "unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation." R. 44. The plan defines the term "Material and Substantial Duties" as "responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified." R. 46. "Any Occupation" is defined as "any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity." R. 43.

The thrust of the plaintiff's argument is that the administrator did not consider his drug dependency when assessing his ability to return to work. The plaintiff asserts that the objective, uncontroverted medical evidence unequivocally suggests that he suffers from a painful, debilitating and inoperable condition and is chronically dependent on narcotic pain relievers. He contends that, despite the evidence, the administrator decided to characterize him as a malingerer,[9] failed to consider his narcotic dependency, and ignored the fact that he

_____

[8]*During the Review process, the Record was inadvertently damaged. The defendant, who submitted the original administrative record, has been directed to file another copy.*

[9]*The plaintiff is principally relying in this regard on surveillance the workers' compensation carrier had conducted and notes and journal entries generally made by Ladonna Bingham, a Liberty Mutual employee, in conjunction with the plaintiff's workers'*

was considered incapable of performing light duty work at Goodyear.  He also argues that the administrator failed to gather or examine evidence relevant to his addiction and consider its impact on his ability to perform the occupations identified by the vocational expert.[10]

The Record does not reflect that the defendant ignored the plaintiff's drug dependency when making its decision.  As is discussed subsequently, the defendant had an independent psychologist review the plaintiff's record and it also had an internal file review conducted to determine whether the plaintiff's medications affected his ability to perform the jobs identified by the vocational expert.

The Record also does not demonstrate that the defendant failed to gather or examine evidence relevant to his use of medications.[11]   The plaintiff does not indicate what

_compensation claim.  The defendant asserts those entries were made by employees of the workers' compensation carrier, who were not involved in deciding the plaintiff's claim for long term disability benefits.  While the employees handling the two claims may have been different, the companies appear to be related.  See e.g., R. 240.  However, that distinction and the limited information in the Record about the surveillance and what precipitated it prevent the court from attributing much significance to the plaintiff's bad faith allegations._

[10]_The plaintiff states that one of the potential jobs identified by the vocational expert, that of expediter, was the same as the position of scheduler, which he held at Goodyear and was unable to perform. The Record does not, though, substantiate this and, as the defendant points out, the vocational expert identified four other jobs that she concluded were reasonable possibilities for the plaintiff._

[11]_While the extent of the administrator's duty to develop the record is unclear, compare Gaither v. Aetna Life Ins. Co., 388 F.3d 759, 773 (10th Cir. 2004) ("[W]e assert the narrow principle that fiduciaries cannot shut their eyes to readily available information when the evidence in the record suggests that the information might confirm the beneficiary's theory of entitlement and when they have little or no evidence in the record to refute that theory.") with Harden v. American Express Fin. Corp., 384 F.3d 498, 500 (8th Cir. 2004) ("[W]e do no hold that a plan administrator has the same independent duty to develop the record that a Social Security administrative law judge does."), the administrator here_

information the defendant could or should have acquired, and he was advised that if he appealed the benefit denial he should "include documentation such as test results, consultations, labs, treatment records, medical records, [and] pharmacy records from all medical providers involved in [his ] care since July 2004," which he felt would support his claim. R. 239. The only supplemental documentation the plaintiff apparently submitted was correspondence from Dr. Campbell dated November 18, 2005, and from Dr. Brady dated December 2, 2005, and the latter's treatment notes. R.177-82,191-99, 209.

What the Record does show is that the evidence regarding the plaintiff's ability to work was conflicting. Therefore, the issue the court must decide is whether, considering the Record as a whole, there is "substantial" evidence supporting the defendant's decision that the plaintiff was not disabled.

The Record clearly includes evidence supporting the defendant's conclusion that, while the plaintiff may not have been able to work at Goodyear, he was capable of being employed elsewhere. One of the plaintiff's treating physicians, Dr. Robinson, who the plaintiff was seeing for pain management beginning in August, 2004, determined that he was could work at a light duty job with certain restrictions. While Dr. Robinson concluded the plaintiff should not operate machinery or drive a commercial vehicle due to his

_____

*obtained information from medical providers identified by the plaintiff, specifically asked for additional information, R. 200, and obtained independent evaluations by a physician and psychologist. As for the plaintiff's complaint that the administrator did not review any medical records prior to August 5, 2004, the plaintiff does not indicate how those records would have affected the disability determination or why he did not submit them himself, even though they had not been requested.*

8

"requirements for narcotic analgesics" and other medications, R. 262-64, he did not indicate that the pain medicine, which he had prescribed,  otherwise affected the plaintiff's ability to work.

Dr. Gale Brown,[12] an independent medical examiner retained by the defendant, found that Dr Robinson's opinion and recommended physical restrictions "generally appear supported." R. 204.  He, too, concluded the plaintiff retained the physical capacity to resume full-time work with specific physical restrictions, but did not consider the impact on the plaintiff's work capacity of his "depression, anxiety, and alleged cognitive impairment due to medication side effects," R. 204, because they fell beyond his area of expertise.  Dr. Brown noted, though, some inconsistencies in the medical records reviewed, "raising questions regarding [the plaintiff's] motivation, credibility and/or psychological factors," including: "[h]igh reported pain severity and narcotic requirements – disproportionate to the mild/modest clinical and diagnostic findings." *Id.*  R. 203.

In his opinion Dr. Brown referenced the findings of a chiropractor, Dr. McClure, who performed a one-time comprehensive evaluation at the request of plaintiff's counsel in February, 2005.  He noted that Dr. McClure "offered conflicting statements regarding work capacity, although [he] supported the claimant's ability to resume working following vocational rehabilitation."   R. 204.  He also remarked that even Dr. Brady, the  treating psychologist, **"did not specifically render [the plaintiff] disabled in [his] most recent

---

[12]*Dr. Brown is board certified in internal medicine and physical medicine and rehabilitation.*

communication." *Id.*

Dr. Brown recommended the defendant obtain additional psychological and medical records and, if psychological records were submitted, a psychological assessment.[13] The defendant then requested additional records and the plaintiff provided Dr. Brady's treatment notes. Liberty Life submitted them with the plaintiff's other medical records for peer review by a psychologist, Dr. Janeen Montgomery, PsyD. She concluded that there was "insufficient evidence to support any restrictions and limitations from a psychiatric perspective during the time period of 7/7/04 through 7/7/05," noting the lack of "objective information to support cognitive impairment." R. 172.

In addition to obtaining a psychological evaluation after it received Dr. Gale's opinion, the defendant had the plaintiff's file reviewed internally to determine whether his medication levels could affect his ability to perform the jobs identified by the vocational expert. R. 219. The examining nurse observed that the plaintiff had achieved a fairly stable dosage of pain relievers over an extended period with only slight fluctuations.[14] She recognized, though, that his dosage levels might have to be increased, because it is not

---

[13]*In a letter dated Dec. 29. 2005, the defendant noted the plaintiff had been treated for co-morbid conditions of depression, anxiety, and cognitive impairment and asked plaintiff's counsel to "follow up with Dr. Brady and any other treating physician(s) and have them submit office treatment notes, consultations, medications, and any diagnostic test results from January 1996 through current as soon as possible." R. 200. Dr. Brady's psychotherapy notes were provided. R. 177-82, 191-99.*

[14]*She did note that both the plaintiff's Kadian/morphine and Lortab dosages had been increased.*

uncommon for patients to develop tolerance to the analgesia effects of pain medications over an extended period of time.  While acknowledging that central nervous system (CSN) drugs can interfere with cognitive abilities, the nurse stated that a stable dosing of those "agents over an extended period of time can also result in an individual developing a degree of tolerance to [those] side effects."  R. 218.  The nurse noted that no formal testing had been conducted confirming the presence or severity of any memory, concentration or other cognitive deficits associated with the CSN drugs and that "no evidence of observed adverse cognitive effects" was documented in the medicals.  *Id.*  "Nonetheless," she found the commercial driving/machine operation restriction to be "prudent & appropriate."  She did not, however, indicate further restrictions should be imposed or find that, because of his dependency on prescription pain medicine the plaintiff would not be capable of performing the specified jobs.[15]

There is contrary evidence in the Record.  The plaintiff's family practice physician, Dr. Campbell, stated the plaintiff "should be totally disabled from Goodyear,"[16] R. 212, and Doctor Cagle, a neurosurgeon who had recommended against surgery, thought the plaintiff

---

[15]*The plaintiff misreads the evidence he cites as demonstrating the insurer's failure to further develop the record regarding the impact of his pain medication.  The nurse did not indicate that the plaintiff's narcotic dependency was "a serious concern which require[d] further evaluation because the record on this issue [was] incomplete."  Plaintiff's rebuttal brief, p. 5.  She also did not state that "further testing [was] necessary."  Id.*

[16]*While Dr. Campbell was the plaintiff's treating physician, "plan administrators are not obliged to accord special deference to the opinions of treating physicians."  Black & Decker Disability Plan v. Nord, 538 U.S. 822, 825 (2003).*

11

should consider permanent light duty or medical retirement, preferring the latter.  R. 305-06.
The Social Security Administration also found the plaintiff to be permanently and totally
disabled[17] and, the plaintiff's treating psychologist, Dr. Brady, stated that because of his
chronic intractable pain and resulting major depressive disorder and sexual dysfunction, the
plaintiff would continue to be on maintenance prescription medications, including morphine
sulfate and Lortab.  R. 192-93.

This is a difficult and close case in which the court has been constrained by the
applicable standard of review and the terms of the Plan.  In reaching its decision, the court
has taken a "hard look at the evidence and arguments presented to the plan administrator to
ensure that the decision was a reasoned application of the terms of the plan to the particular
case, untainted by the conflict of interest."  Fought, 379 F.3d at 1006.  While the court might
well have reached a different result had its review been *de novo*, or on the basis of whether
Liberty Life's decision was supported by a preponderance of the evidence, those are not the
applicable standards of review here.  Rather, applying the standard of review discussed

---

[17]*This finding is not, however, determinative.  Meraou v. Williams Co. Long Term Disability Plan, No. 06-5051, 2007 WL 431515, at \*9 (10th Cir. Feb. 9, 2007); Wagner-Harding v. Farmland Indus. Inc. Employee Ret. Plan, No. 01-3085, 2001 WL 1564041, at \*5 (10th Cir. Dec. 10, 2001) (holding that Social Security Administration "proceedings are entirely different and separate from a claim under ERISA, with different parties, different evidentiary standards, and different bodies of law governing their outcomes"); see Black & Decker, 538 U.S. at 832 (discussing "critical differences between the Social Security disability program and ERISA benefit plans").  Meraou and Wagner-Harding are unpublished decisions cited for persuasive value only under 10th Cir. R. 36.3(B).*

above, the court concludes the defendant's denial of coverage was not arbitrary and capricious.  Its determination that the plaintiff was not "disabled" was reasonable and supported by substantial evidence.  Accordingly, judgment will be entered in favor of the defendant and against the plaintiff.  The defendant's request for attorney's fees and costs pursuant to 29 U.S.C. § 1132(g) is denied.

       **IT IS SO ORDERED**.

       Dated this 19th day of April, 2007.


_____
JOE HEATON
UNITED STATES DISTRICT JUDGE